## Richmond

### Vivian M. Wade v. James E. Ford.

January 21, 1952.

Record No. 3866.

Present, Hudgins, C. J., and Eggleston, Buchanan, Miller and Smith, JJ.

The opinion states the case.

*H. M. Ratcliffe* and *H. Carter Redd,* for the plaintiff in error.

*Robert C. Lyne,* for the defendant in error.

Eggleston, J., delivered the opinion of the court.

This matter is before us on a writ of error granted to Vivian M. Wade to review a judgment entered in a proceeding instituted

against him in the court below by James E. Ford, under Code, § 8-836 *ff.*, for the purpose of ascertaining and determining the true-boundary or dividing line between adjoining tracts of land in Henrico county owned by the two parties.

The facts are agreed and the question presented is whether the judgment has been rendered in accordance with the application of correct legal principles. The common grantor, P. A. Ford, owned 10.2 acres of land, fronting 431 feet on the south side of Kain road, and extending back for approximately 1423 feet to the property of Conway. By deed dated May 2, 1942, and recorded on the same day, P. A. Ford and wife conveyed to W. W. Temple and wife the eastern three acres of this land, fronting 125 feet on the south side of Kain road, extending back to Conway's line, and shown by a plat thereto attached. This land is now owned by Birdie J. Eades and wife and is not involved in the present controversy.

By deed dated May 14, 1942, and recorded on May 29th of the same year, P. A. Ford and wife conveyed to James E. Ford three acres of land, fronting 115 feet on the south side of Kain road, running back to Conway's line, and shown on an attached plat. This property is immediately west of that now owned by Eades.

By deed dated June 29, 1942, and recorded on July 22nd of the same year, P. A. Ford and wife conveyed to Agnes Henley Sharpe the western or remaining portion of the original tract of 10.2 acres. Attached to this deed was a plat showing that the tract conveyed contained 4.2 acres, more or less, that it fronted 233 feet on the south side of Kain road, was bounded on the east by the James E. Ford property, on the south by the Conway land, and on the west by Mill Branch, the latter being the western boundary of the original P. A. Ford tract of 10.2 acres. The Sharpe property is now owned by Vivian M. Wade.

Thus, while the P. A. Ford original tract had a total frontage of 431 feet on the south side of Kain road, by the three deeds to W. W. Temple, James E. Ford and Agnes Henley Sharpe, respectively, P. A. Ford has conveyed properties with a total recited frontage of 473 feet, or 42 feet in excess of what he owned, on Kain road.

The present controversy involves the right of ownership of, or title to, the strip of land fronting 42 feet on the south side of Kain road and extending back approximately 1407 feet to the Conway line.

In his petition James E. Ford alleged that according to the true dividing line between the properties the 42-foot strip is embraced within the property which he acquired from P. A. Ford by deed dated May 14, 1942.

In his grounds of defense Wade denied that the line claimed by the plaintiff, Ford, was the true boundary line between the properties. He alleged that the true line is that shown in the deed of June 29, 1942, from P. A. Ford and wife to Agnes Henley Sharpe, and that according to this line the disputed piece of land is embraced within the property which he (Wade) later acquired from Sharpe.

Wade further alleged in his grounds of defense that at the time he purchased his property, the plaintiff, James E. Ford, showed him (Wade) the dividing line between the properties; that this is the same line called for in the deed from P. A. Ford to Sharpe; that he (Wade), relying upon such "statements and actions" of the plaintiff, James E. Ford, purchased the property from Sharpe; and that the plaintiff was "estopped to deny that the boundary line" as shown by Ford to Wade "is not the true and correct boundary line" between the properties.

The lower court sustained the contention of the plaintiff, Ford, that the defense of estoppel sought to be asserted was not a valid defense in the boundary line dispute, and accordingly struck it from the grounds of defense. The effect of this ruling was, of course, to exclude evidence of such "statements and actions" of the plaintiff in the proceeding.

By stipulation the matter was then submitted to the trial court for determination upon the record titles of the lands of the two parties which we have outlined. Since it plainly appeared from these documents that at the time the common grantor, P. A. Ford, conveyed the disputed property to Sharpe, Wade's predecessor in title, he (P. A. Ford) had by a previously recorded deed conveyed it to James E. Ford, a judgment in favor of James E. Ford necessarily followed.

The only question, then, before us is whether the lower court was correct in holding that the defense of estoppel which Wade sought to interpose is not a valid one in the present proceeding. In our opinion the ruling was plainly right.

This is not a case in which oral evidence is sought to be introduced to clarify an ambiguous description in a deed, such as where one interpretation locates the boundary line along one

course, another interpretation locates it along another, and the evidence of the purported agreement of the parties is admitted to determine the true course. 2 Minor on Real Property, 2d Ed., § 967, p. 1238; *Hamman* v. *Miller*, 116 Va. 873, 83 S. E. 382. Here there is no ambiguity in the description of the boundary line which is clearly fixed by the plats attached to the deeds in the chains of title of the parties. The dispute is as to which of the two lines, accurately set forth, but differently located, in each plat should prevail.

Nor is this a case in which the defendant, Wade, claims that he took possession of the land in question pursuant to the plaintiff's indication as to where the boundary line was and held adverse possession of it for the statutory period. No question of title by adverse possession is involved.

In substance, Wade's claim is that because the plaintiff (Ford) showed him where the dividing line ran, Ford is estopped to make an inconsistent claim in the present proceeding. In other words, Wade says that by virtue of Ford's declarations and conduct the legal title to the property in question should be excluded from the operation of the deed whereby Ford had acquired title thereto, and should be held to be vested in him (Wade). We have repeatedly held that this position cannot be maintained.

In *McMurray* v. *Dixon*, 105 Va. 605, 610, 611, 54 S. E. 481, we said: "* * * It is settled law in this State that the disclaimer of a freehold estate can only be made by deed, or in a court of record. In the case of disputed boundaries the parties may agree upon a line, by way of compromise, and if they take and hold possession up to that line the requisite statutory period, the mere possession will, in time, ripen into title. But no mere parol agreement to establish a boundary and thus exclude from the operation of a deed land embraced therein can divest, change or affect the legal rights of the parties growing out of the deed itself."

See also, *Cox* v. *Heuseman*, 124 Va. 159, 166, 97 S. E. 778; *Bradshaw* v. *Booth,* 129 Va. 19, 41, 42, 105 S. E. 555; *Marshall* v. *Jameson,* 145 Va. 605, 612, 134 S. E. 573.

In *Cox* v. *Heuseman, supra,* in commenting on the impropriety of granting instructions which in that case would have applied the principle for which the defendant, Wade, here contends, it was said: "These instructions (which were not attempting to deal with adverse possession as a source of title) amounted to

saying to the jury that acquiescence or verbal acknowledgment or agreement as to the location of a disputed boundary could, *proprio vigore,* pass title from one man and vest it in another. Such is not the law. Acquiescence and admissions as to boundaries may become very proper and very important evidence in determining where the true boundaries are, and such acquiescence and admissions may exist or be made under circumstances which will estop a landowner from denying them; but they are not in themselves independent sources of title." (124 Va., at page 166.)

Again, in *Bradshaw* v. *Booth,.supra,* we said: "* * * It is well settled by the weight of authority, and certainly in Virginia, although contrary holdings may be found elsewhere, that such mere acquiescence does not operate as an estoppel in such case, for the reason that, if this were so, such acquiescence would be given the effect of an independent source of title. * * *" (129 Va., at page 42.)

We have held that a proceeding under this statute to establish a boundary line between coterminous owners should be tried according to the principles applicable to an action in ejectment. *Brunswick Land Corp.* v. *Perkinson,* 146 Va. 695, 704, 132 S. E. 853; *Prettyman* v. *Duer & Co.,* 189 Va. 122, 136, 52 S. E. (2d) 156, 163.

It has long been established in this jurisdiction that equitable estoppel cannot be set up as a defense in ejectment. Burks Pleading and Practice, 3d Ed., § 118, p. 224, and cases there cited.

In *Haney* v. *Breeden,* 100 Va. 781, 782, 783, 42 S. E. 916, we held that an action of ejectment cannot be defended by reliance upon a mere equitable estoppel, as by showing by parol evidence that the plaintiff had told the defendant before completing his purchase that the plaintiff did not claim the land in dispute.

This is precisely what the defendant, Wade, sought to do in the present case and what the lower court correctly held that he should not be permitted to do.

In our opinion the judgment of the lower court is plainly right and accordingly it is

*Affirmed.*