## Richmond

### Virginia E. Faison, et. al.

### v.

### Union Camp Corporation, et. al.

September 9, 1982

Record No. 800601.

Present: All the Justices.

*E. Carter Nettles, Jr. (Clinton B. Faison, Jr.,* on briefs), for appellants.

*Rodham T. Delk, Jr. (Rodham T. Delk; John C. Baker; Charles C. Wentworth, II; Delk and Barlow; Wentworth, Buxton & Maguire,* on briefs), for appellees.

POFF, J., delivered the opinion of the Court.

The issues on this appeal stem from a dispute over title to a 10-acre parcel of land and the timber standing on it.

Conflicting claims were raised by a bill to quiet title and a cross-bill seeking declaratory judgment and by responsive pleadings. The chancellor held that "fee simple title to the 10 acre tract of land . . . is vested in Morris W. Clements and Frances B. Clements [complainants in the cross-bill] . . . subject to the rights and privileges of Union Camp Corporation [complainant] in and to the timber on the said parcel of land". Appealing from the judgment, Virginia E. Faison, one of several named respondents,[1]

---

[1] Respondents named in Union Camp's bill were Faison, the Clements, Montpelier Land Trust, Phillips M. Dowding, Trustee, and "John Doe" Shaw. Shaw, who claims timber rights under Faison, joins in her appeal.

claims title to the land and timber under a deed executed by her husband, C. Brooks Faison.

The three claimants trace title to Albert H. Ochsner. In 1917, Ochsner acquired a boundary of land described in predecessor deeds as "Montpelier". The first deed in the chain referred to a map of Montpelier plantation made by Samuel Z. Griscum in 1870. That map, filed but not recorded in the land records, was admitted into evidence as Faison's exhibit.

In 1951, Ochsner acquired from Estelle J. Lachmund a 10-acre parcel, a portion of Broomfield plantation, described in part as bounded "on the east by other lands of the said Albert H. Ochsner, known as 'Montpelier' ". A similar reference to the Montpelier boundary had appeared in deeds to this parcel dating back to 1872.

Ochsner decided to sell the Broomfield parcel and a major portion of Montpelier, and in July 1952, W. G. Chappell prepared a plat. That plat, which cannot be legibly reproduced in the publication of this opinion, is significant to our analysis in several particulars. The perimeter metes and bounds shown on the plat embraced all the property to be sold. The 10-acre parcel in dispute, triangular in shape, appears in the northwest segment of the plat. A "former PL [property line] approximate" runs between this parcel and Montpelier tract 4 to the east. Similar lines separate the other numbered tracts in the Montpelier property. Chappell listed the acreage in tracts 4, 5, 6, and 7 in the aggregate as 480.7, tract 1 as 134.9, and total as 615.6. Chappell noted that "the lines of this survey were run along marked lines established by a previous survey". A comparison of the Chappell plat and the Griscum map indicates that Chappell's note referred to the 1870 Griscum survey. The Griscum map did not show or refer to the 10-acre Broomfield parcel.

The Chappell plat, which was put to record in Plat Book 5, Page 52, contained another note: "See Deed Book 52 page 450 for deed recorded". By this deed, dated September 2, 1952, Ochsner conveyed to Fred P. Hamrah two parcels described as follows:

FIRST: All that certain tract or parcel of land known as "Montpelier" . . . containing . . . (615.6) acres, more or less, described as follows by reference to a certain plat, dated July, [1952], made by W. G. Chappell, C. L. S., . . . a copy

*of which plat is attached to this deed and is to be recorded therewith, reference to which is hereby invited. . . .*

*SECOND: All of that certain tract or parcel of land . . . containing ten (10) acres, more or less, and bounded as follows: On the North by State Road . . . (#602), leading from Cabin Point to Ruffin's Corner; on the South by lands of Lacy L. Wooden, being a part of "Broomfield"; and on the East by other lands of the said Albert Ochsner, known as "Montpelier"; and on the West by said State Road . . . being in all respects the same land conveyed to the said Albert H. Ochsner by Estelle J. Lachmund. . . .*

In the course of the next three years, Hamrah sold all the property he had acquired from Ochsner. In 1954, he sold tract 1 containing 134.9 acres to P. H. Cox, a stranger to these proceedings. On March 29, 1955, Hamrah conveyed back to Ochsner

*All that certain tract or parcel of land . . . known as part of Montpelier and described on a certain plat . . . recorded . . . in Plat Book [5, Page 52], as tracts [4, 5, 6, and 7], aggregating . . . (480.7) acres, more or less, and being a portion of the property conveyed to Fred P. Hamrah by A. H. Ochsner and wife by deed dated September [2, 1952], recorded in Deed Book [52, page 450].*

Three days later, April 1, 1955, Hamrah deeded the 10-acre parcel to C. B. Faison. The deed referred to the Ochsner-Hamrah deed and recited the same description of that parcel. On the same day, Ochsner deeded Faison the 480.7 acres in tracts 4, 5, 6, and 7, described by reference to the Chappell plat and the Hamrah-Ochsner deed.

In 1962, Mr. and Mrs. Faison conveyed the 480.7 acres to Deanetripp Company, and in 1968, Deanetripp deeded the land to Montpelier Land Trust. In each deed, the land was described by reference to the Chappell plat and the predecessor deed.

Referring to the Chappell plat and to the Deanetripp deed, Montpelier Land Trust deeded Union Camp the rights to the timber on this property in February 1974. In July 1974, Montpelier Land Trust conveyed to the Clements 105.25 acres, a portion of the land acquired from Deanetripp. The land conveyed was described by reference to the Deanetripp deed and to a May 1974 plat prepared by W. G. Chappell. The 1974 plat combined all of

the 10-acre parcel in dispute with a portion of the land labeled "tract 4" on the 1952 Chappell plat.

The Clements claim title to the 10-acre parcel under that deed. Virginia Faison claims title to that parcel and the timber on it under a deed executed by her late husband in 1969. Union Camp claims title to the timber on the 10-acre parcel as part of the 480.7 acres described in its 1974 deed from Montpelier Land Trust.

The premise upon which the chancellor based his decision in favor of Union Camp and the Clements (hereinafter, the appellees) was his threshold ruling that, under the Ochsner-Hamrah deed, "the 10 acre parcel in controversy was effectively merged or combined by proper reference and incorporation by plat with the larger tract commonly known as 'Montpelier'." In support of the decision flowing from that premise, the appellees point out that all the deeds through which they trace title to Ochsner refer to the 1952 Chappell Plat.[2] Hence, they argue, since the 10-acre parcel became "merged or combined" with tract 4 as part of the Montpelier property in the Ochsner-Hamrah deed, it remained so in every subsequent deed. We cannot accept this argument because we disagree with the chancellor's threshold ruling.

█ The clause describing the Montpelier property in the Ochsner-Hamrah deed incorporated the Chappell plat by reference, and that plat must be considered "part of the instrument itself." *Richardson* v. *Hoskins Lumber Co.*, 111 Va. 755, 757, 69 S.E. 935, 936 (1911). The appellees contend that the plat shows "on its face" that the chancellor's merger ruling was correct. They rely upon the plat's perimeter metes and bounds which enclose both properties described in the deed and upon the fact that the line drawn between the 10-acre Broomfield parcel and Montpelier tract 4 is designated as a *former* property line. But the appellees see only part of the face of the plat. They ignore Chappell's note: "See Deed Book 52 page 450 for deed recorded". Giving effect to this notation, the content of the Ochsner-Hamrah deed became as much a part of the plat as the plat was part of the deed. The two instruments, cross-referenced as they were, must be construed together to determine the description of the land conveyed. So construed, the deed and plat leave no room for reasonable doubt.

---

[2] The Montpelier Land Trust-Clements deed contains no express reference to the Chappell plat, but it does refer to the predecessor deed which contains such a reference.

■ The Ochsner-Hamrah deed contained two descriptive clauses referring to separate predecessor deeds. The first named Montpelier as its source, the second, Broomfield. If reference to the plat was intended to have the effect of converting the historically distinct properties into a single estate, then one descriptive clause referring to the plat and to the separate predecessor deeds would have been sufficient. Unless two provisions in a deed are irreconcilably inconsistent, courts must assume that the parties intended both to have meaning and give effect to both. *See Conner v. Hendrix,* 194 Va. 17, 72 S.E.2d 259 (1952). There is nothing inconsistent in the descriptive clauses in the Ochsner-Hamrah deed, and it is unreasonable to conclude, as the appellees urge, that the second clause was inadvertent "surplusage". On the contrary, each clause is independent in derivation, substance, and import. The logical conclusion is that both parties intended that the Broomfield parcel and the Montpelier property continue to be, as they always had been, individual entities, separate and distinct each from the other.

■ The exhibits introduced at trial reinforce that conclusion. On March 29, 1955, Hamrah conveyed back to Ochsner Montpelier tracts 4, 5, 6, and 7. The Hamrah-Ochsner deed referred to only one of the two descriptive clauses the parties had used in the deed executed less than three years earlier. Thus, the parties signified a second time that the plat was never intended to have the effect of combining the Broomfield parcel and the Montpelier property.

Further evidence to such effect is found in the deeds to Faison. The Ochsner-Faison deed conveyed the Montpelier property; the Hamrah-Faison deed conveyed the Broomfield parcel; both deeds were dated the same day. For the third time, Ochsner and Hamrah contradicted the merger theory the appellees urge.

Construing the Ochsner-Hamrah deed and the contemporary plat as mutually interdependent muniments of title, and finding no merit in the appellees' complaint of ambiguity, we hold that the 10-acre Broomfield parcel and the Montpelier property were clearly described and conveyed as separate entities and that the chancellor erred in ruling otherwise.

■ The appellees' chain of title begins with the conveyance we have just construed. All the deeds in that chain were duly recorded. Deeds recorded pursuant to Code § 55-96 constitute constructive notice to subsequent purchasers, and the titles they take

are subject to whatever adverse conveyances or encumbrances they should have discovered in a proper search of the records. *See Chavis v. Gibbs,* 198 Va. 379, 94 S.E.2d 195 (1956). "Every prudent man about to purchase land searches the records to see whether the property has been previously conveyed or encumbered." *Pillow v. Southwest, &C., Imp. Co.,* 92 Va. 144, 152, 23 S.E. 32, 34 (1895). Had the appellees conducted a prudent search, they would have found, as we have found, that the 10-acre Broomfield parcel Hamrah deeded to Faison was not part of the property conveyed in the chain of title through which they claim.

■ Nevertheless, the appellees argue that, under the doctrine of estoppel by deed, Virginia E. Faison was in privity with her husband and, as such, is estopped to deny that the 10-acre parcel was part of the land conveyed in the Faison-Deanetripp deed. They rely upon *School Board v. Smith,* 134 Va. 98, 104, 113 S.E. 868, 869 (1922), which holds that a grantor "is estopped, as against the grantee, to assert anything in derogation of the deed."

Without deciding whether the doctrine applies to a grantor who conveys nothing but an inchoate dower interest, we hold that the doctrine is inapplicable here. Since no merger occurred in the Ochsner-Hamrah conveyance, the Faison-Deanetripp deed to tracts 4, 5, 6, and 7 did not purport to convey the 10-acre parcel. Consequently, Mrs. Faison asserts nothing in derogation of that deed.

We will reverse the judgment below and enter final judgment here declaring that Virginia E. Faison is vested with fee simple title to the 10-acre Broomfield parcel as shown on Respondent's Exhibit #4, entitled "Plat of the property of Virginia E. Faison", prepared by James K. Alvis, Jr., and dated February 10, 1976.

*Reversed and final judgment.*