PRESENT: Lemons, Goodwyn, Millette, Mims, and Powell, JJ., and
Russell and Koontz, S.JJ.

CNX GAS COMPANY LLC

                                           OPINION BY
v.  Record No. 130306      SENIOR JUSTICE CHARLES S. RUSSELL
                                      January 10, 2014

JAMES RASNAKE, ET AL.

FROM THE CIRCUIT COURT OF RUSSELL COUNTY
Michael L. Moore, Judge

This appeal turns upon the interpretation of the language used by the grantor in a deed of bargain and sale.

### Facts and Proceedings

The essential facts are undisputed. In 1887, Jacob Fuller and Mary Fuller, husband and wife, were the owners of a tract of land in Russell County containing 414 1/8 acres. By deed dated February 14 of that year, they conveyed "all the coal, in, upon, or underlying" the 414-acre tract, as well as the appurtenant timber interests and privileges, to Joseph J. Doran and W. A. Dick. No other interests in the 414-acre tract were conveyed until 1918.

By deed dated May 23, 1918, W. T. Fuller, the successor in interest to Jacob and Mary Fuller, conveyed to Unice Nuckles a 75-acre portion of the 414-acre tract. That deed is the subject of this controversy. It provides in pertinent part:

> That in consideration of the sum of Eight Hundred and
> Forty-Six 58/100 Dollars, in hand paid, the receipt of
> which is hereby acknowledged, the said W. T. Fuller has
> sold and by these presents do grant unto the said parties
> of the second part, with General Warranty, all the

following piece or parcel of land lying on the ridge between Lewis Creek and Swords Creek and contains about seventy-five acres be the same more or less [metes and bounds description follows]. This sale is not ment [sic] to convey any coals or minerals. The same being sold and deeded to other parties heretofore.

The dispositive question before us is the interpretation to be given to the last two sentences quoted above.[1]

The appellant, CNX Gas Company, LLC (CNX) claimed the mineral rights, excluding coal, in the 75-acre tract as lessee under the successors in interest to Unice Nuckles, the grantee in the 1918 deed. The appellees, James D. Rasnake, Mike O. Rasnake and Lucy Mae Blankenship, claimed the same rights as successors in interest to the Fullers, the grantors in the 1918 deed. CNX has been producing coal bed methane gas for some time from the property it has leased.[2]

The plaintiffs brought this action in the circuit court and CNX filed an answer and counterclaim for a judgment declaratory of its title to the mineral estate in the 75-acre tract. By

[1] CNX contends that the last ten words do not constitute a sentence, but were intended to be a dependent clause modifying the preceding sentence. This appeal involves only mineral rights.

[2] Parties on both sides were later added, substituted and dismissed by orders in the circuit court. When the final order was entered, the parties plaintiff were James Rasnake, Bobby Lee Rasnake, Peggy Rasnake, Donna Jean Whitt, Debbie Cook Carlock and Harold David Dye (hereinafter the plaintiffs), as successors in interest to the Fullers. The sole defendant was CNX, as successor in interest to Unice Nuckles.

2

agreement of the parties, the court heard the case and arguments of counsel ore tenus on the above evidence, which was not disputed.

By letter opinion, the court held that the questioned language in the 1918 deed created "an unambiguous exception of the coal and minerals located on the property.  The first clause excepts all coal and minerals from the conveyance, and the second clause explains the reason for the exception.  As the deed excepts any coal and minerals, the exception is not limited to . . . coal and minerals previously conveyed.  The second clause does not limit the exception created in the first clause."  The court entered a final order declaring that the plaintiffs owned the mineral estate.  We awarded CNX an appeal.

## Analysis

Where the language of a deed clearly and unambiguously expresses the intention of the parties, no rules of construction should be used to defeat that intention.  Where, however, the language is obscure and doubtful, it is frequently helpful to consider the surrounding circumstances and probable motives of the parties.  Harris v. Scott, 179 Va. 102, 108, 18 S.E.2d 305, 307 (1942); Schultz v. Carter, 153 Va. 730, 734, 151 S.E. 130, 131 (1930).

Applying that principle, we initially confine our consideration to the four corners of the 1918 deed to ascertain

3

whether its language concerning mineral rights is plain and unambiguous. We have defined "ambiguity" as "the condition of admitting of two or more meanings, of being understood in more than one way." Berry v. Klinger, 225 Va. 201, 207, 300 S.E.2d 792, 796 (1983) (internal quotation marks omitted).

The disputed language in the 1918 deed is obviously capable of being understood by reasonable persons in more than one way, as demonstrated by the interpretations advanced by the plaintiffs, CNX, and the opinion of the circuit court. The language suggests at least three possibilities: (1) that the grantors mistakenly believed that all mineral rights, including coal, had previously been conveyed to others and wished to make clear that they were being excluded from the 1918 conveyance to avoid future liability under their general warranty; (2) that the grantors knew that coal alone had been previously conveyed and wished to reserve all other mineral rights to themselves, and (3) that the grantors intended to convey to the grantee only those mineral rights that had not been previously conveyed to others.

It is therefore appropriate to go outside the four corners of the deed to consider the existing circumstances, at least to the extent of the fact that coal interests had been conveyed in 1887 but that all other mineral rights remained in the grantors until delivery of the 1918 deed. See, e.g., Ott v. L&J

4

Holdings, LLC, 275 Va. 182, 188, 654 S.E.2d 902, 905 (2008) ("Because the deed could be understood in more than one way, the circuit court correctly decided that it was ambiguous and admitted parol evidence to resolve the ambiguity.").

We are also aided by several well-established rules of construction. Where language in a deed is ambiguous, the language must be construed against the grantor and in favor of the grantee. Ellis v. Commissioner, 206 Va. 194, 202, 142 S.E.2d 531, 536 (1965). We have called this rule "one of the most just and sound principles of the law because the grantor selects his own language." Elterich v. Leicht Real Estate Co., 130 Va. 224, 238, 107 S.E. 735, 759 (1921). A grantor must be considered to have intended to convey all that the language he has employed is capable of passing to his grantee. Hamlin v. Pandapas, 197 Va. 659, 664, 90 S.E.2d 829, 833 (1956).

Other rules of construction also apply when language in a deed is found to be ambiguous. The whole of a deed and all its parts should be considered together. Auerbach v. County of Hanover, 252 Va. 410, 414, 478 S.E.2d 100, 102 (1996). Effect should be given to every part of the instrument, if possible, id., and no part thereof should be discarded as superfluous or meaningless. Foster v. Foster, 153 Va. 636, 645, 151 S.E. 157, 160 (1930). Where the meaning of the language is not clear, or the deed is not artfully drawn, the court should interpret its

terms to harmonize them, if possible, so as to give effect to the intent of the parties.  See id. at 646, 151 S.E. at 160.

When a deed's language is unclear as to the nature and extent of the estate the grantor intended to convey, so strong is the presumption in favor of that interpretation most favorable to the grantee, that we have held that where there is doubt whether one or two parcels of land were intended to be conveyed, the deed will be construed to pass title to both. Carrington v. Goddin, 54 Va. (13 Gratt.) 587, 610 (1857), cited with approval in Bostic v. Bostic, 199 Va. 348, 355-56, 99 S.E.2d 591, 597 (1957); see also Chapman v. Mill Creek Coal & Coke Co., 46 S.E. 262, 263 (W. Va. 1903).

The granting clause in the 1918 deed purports to convey a fee simple absolute.  The language that follows the description appears to impose a limitation of questionable effect.  At common law, the granting clause always prevailed over language repugnant to it, but under the modern rule, the intent of the parties, where clearly and unequivocally expressed, will be given effect.  When, however, it is impossible to discover with reasonable certainty the parties' intent from the language of the deed, the common law rule still applies and the granting clause prevails.  Goodson v. Capehart, 232 Va. 232, 236, 349 S.E.2d 130, 133 (1986).

That rule applies with particular force to exceptions in a deed that are repugnant to the granting clause. "An exception in a deed is always to be taken most favorably for the grantee, and if it be not set down and described with certainty, the grantee shall have the benefit of the defect." Bradley v. Virginia Railway & Power Co., 118 Va. 233, 238, 87 S.E. 721, 723 (1916) (citation and internal quotation marks omitted).

Applying the foregoing rules to the disputed language in the 1918 deed before us, we consider the three possible interpretations suggested above. The first fails because it is contrary to the undisputed facts. The coal had previously been conveyed to others and the grantors are bound by the condition of their title of record. The second interpretation fails because it discards the last ten words of the purported exception as superfluous and meaningless and treats the first sentence as an unlimited and unconditional reservation of mineral rights.[3] The third interpretation gives effect to all of the language employed by the grantors and eliminates conflict among its parts. Under that interpretation, the last ten words

---

[3] The second interpretation treats the ambiguous language as an express and unconditional exception, although it lacks any words demonstrating an intent on the grantors' part to reserve any mineral rights to themselves. Further, the explanation that all mineral rights had been conveyed to others is inconsistent with an intent to reserve them to the grantors.

7

modify the preceding sentence, denoting the grantors' intent to exclude from the conveyance only those mineral rights previously conveyed to others, namely the coal.

So construed, the deed conveys to the grantee in fee simple all of the mineral interests in the land embraced within the deed's metes and bounds description that the grantors were capable of conveying at the time, excluding only the coal, which they no longer owned. Accordingly, we adopt that interpretation and hold that the circuit court erred in construing the disputed language to constitute an unambiguous exception of all coal and other minerals from the conveyance.

## Conclusion

For the reasons stated, we will reverse the judgment appealed from and enter final judgment here for CNX, holding that the 1918 deed conveyed to Unice Nuckles and her successors in interest all of the mineral estate in the land described therein except the coal previously conveyed to others.

<u>Reversed and final judgment.</u>

8